OPINION
Plaintiffs-appellants Donald and Brenda Crego appeal from a summary judgment rendered in favor of defendant-appellee Columbus Equipment Company (CEC). The Cregos argue that the trial court erred by finding that they had not exercised due diligence in determining what, if any, solvent, successor(s) existed with respect to a now-defunct manufacturer that created an allegedly defective product which seriously injured Donald Crego, and, therefore, were not entitled to have the statute of limitations and savings period tolled in order to preserve their products liability action against CEC, a non-manufacturing seller of the allegedly defective product, pursuant to this court's previous decision in Crego v. Baldwin-Lima-Hamilton Corp. (Feb. 27, 1998), Montgomery App. No. 16515, unreported.
We conclude that the trial court did err by finding that the Cregos had not exercised due diligence in determining whether a solvent successor(s) existed with respect to the manufacturer, since the evidence presented demonstrated that: (1) the Cregos' counsel conducted a diligent inquiry into the subject, finding that the manufacturer had at least one solvent, successor corporation; (2) this same corporation had filed a joint answer in a prior action between the parties, admitting that it was a successor corporation to the manufacturer; and (3) the corporation did not attempt to withdraw its admission until after the one-year period contained in the savings statute had expired. Accordingly, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
 I
On July 26, 1991, Donald Crego suffered the amputation of several fingers on his right hand while operating a Madsen Drum Mixer for his employer Butler Asphalt. Butler Asphalt had purchased the machine from CEC in 1969. The machine had been manufactured by the Baldwin-Lima-Hamilton Corporation (BLH).
On July 23, 1993, Donald Crego and his wife, Brenda, brought a products liability action against Butler Asphalt, CEC, and BLH, as well as several companies which the Cregos alleged were the successor corporations to BLH, to wit: Armour Company, the Greyhound Corporation, the Dial Corporation, and the Clark Equipment Company. The Cregos alleged that BLH had placed in the stream of commerce, a product (the Madsen Drum Mixer) that was defective in manufacture, design, and warning. On August 30, 1993, BLH, Armour, Greyhound, Dial, and Clark Equipment jointly filed an Answer, wherein they admitted in paragraph nine that Armour, Greyhound, and Dial "are successor corporations of BLH."
CEC subsequently moved for summary judgment, claiming protection as a supplier from strict liability, pursuant to R.C.2307.78(B). Before the trial court could rule on CEC's motion for summary judgment, the Cregos voluntarily dismissed their complaint against all of the defendants, pursuant to Civ.R. 41(A), on March 30, 1994.
On March 22, 1995, the Cregos re-filed their complaint pursuant to the savings statute contained in R.C. 2305.19, naming BLH, Armour, Greyhound, and Dial as defendants, but omitting Butler Asphalt, CEC, and Clark Equipment from the lawsuit. The Cregos alleged that Armour, Greyhound, and Dial were successor corporations of BLH. Armour, Greyhound, and Dial filed an answer to the Cregos' complaint, admitting, once again, that they "are successor corporations of BLH."
On March 7, 1996, Dial filed a Motion for Summary Judgment, wherein it acknowledged that it was a successor corporation of BLH, but argued, nonetheless, that it was not liable as a successor corporation of BLH. The trial court overruled Dial's motion, finding that a triable issue of fact existed regarding whether Dial was a "mere continuation" of BLH.
During a mediation conference in July, 1996, Dial's corporate counsel informed the Cregos that Dial had erroneously admitted to being a successor corporation to BLH, and that, in fact, Dial was not a successor corporation to BLH. The Cregos subsequently were told by Dial's corporate counsel that: (1) BLH had ceased operations in 1972, and was formally dissolved in 1976[1]; (2) Armour had closed its operations in 1983, and merged with Greyhound in 1992, "as basically a housekeeping transaction"; (3) during the 1990's, Greyhound had changed its name, first, to the Greyhound Dial Corporation, and then simply to the Dial Corporation; and (4) Dial and Greyhound are "one in the same corporation."
On July 24, 1996, the Cregos amended their complaint to add CEC as a defendant. In October, 1996, the Cregos settled with Dial. In November, 1996, CEC moved for summary judgment, arguing that the statute of limitations period for product liability claims and the period allowed by the savings statute had expired. In April, 1997, the trial court rendered summary judgment in favor CEC. The Cregos appealed to this court.
In Crego v. Baldwin-Lima-Hamilton Corp. (Feb. 27, 1998), Montgomery App. No. 16515, unreported, we reversed the trial court's grant of summary judgment, and remanded the cause, instructing the trial court to determine:
 (1) whether the Cregos exercised due diligence in investigating the financial condition of BLH and its successor corporations before the expiration of the statute of limitations period and the savings period; (2) whether the information discovered by the Cregos would have led a reasonable person to believe that BLH or its successor corporations were solvent and able to satisfy judgment; and (3) whether the Cregos abandoned their efforts to prosecute their claim against CEC based on their reasonable belief that BLH or its successor corporations were solvent and able to satisfy judgment. If the trial court determines that the Cregos, after exercising due diligence, reasonably believed before the statute of limitations period and savings period expired that BLH or its successor corporations were solvent and abandoned their efforts to prosecute their claims against CEC as a result, then the trial court shall equitably toll the statute of limitations, including the savings period, from the date that the Cregos had a reasonable basis for believing that BLH or its successors were solvent until the date that a reasonable plaintiff would have known that BLH and its successors were insolvent, and determine the timeliness of the Cregos' claims against CEC accordingly."
On remand, the trial court held a hearing on the "due diligence" issue, and both parties filed post-hearing briefs, afterwards. In April, 1999, the trial court entered summary judgment on the issue in favor of CEC. Initially, the trial court found that "the Plaintiffs (the Cregos) did exercise due diligence, based on the checking they did and the admissions and representations of BLH-Armour-Greyhound-Dial, in investigating the financial condition of Dial, that such investigation would have led a reasonable person to believe that Dial was solvent and that they (the Plaintiffs) abandoned their claim against CEC, a supplier, based on this belief." However, the trial court found that "inherent" in the questions that were posed to it on remand, was the question of whether the Cregos exercised due diligence in determining what were BLH's actual successor corporations, andthen determining whether those corporations were solvent. The trial court concluded that the Cregos had failed to exercise due diligence in determining what the successor corporations were, prior to the expiration of the savings period, noting that the Cregos were "always able" to determine through discovery whether Dial was, in fact, a successor corporation of BLH. Accordingly, the trial court concluded that the Cregos "did not, within the necessary statutory time parameters, exercise due diligence in determining the successor corporations to BLH and thereafter proceeding to determine their solvency."
The Cregos appeal from the trial court's grant of summary judgment in favor of CEC.
 II
The Cregos' First Assignment of Error states:
 THE TRIAL COURT'S DETERMINATION THAT APPELLANTS DID NOT EXERCISE DUE DILIGENCE IN DETERMINING WHAT WERE THE SUCCESSOR CORPORATIONS CONSTITUTED AN ABUSE OF DISCRETION IN THE ABSENCE OF ANY TESTIMONY OR EVIDENCE IN SUPPORT OF THAT CONCLUSION.
The Cregos argue that the trial court erred by finding that they did not exercise due diligence in determining what the successor corporations to BLH actually were, particularly in light of the fact that counsel for Armour, Greyhound, and Dial admitted in histheir August 30, 1993 Answer that those companies were successor corporations to BLH, and Dial did not withdraw its admission until July, 1996 — long after the statute of limitations and savings period had expired. We agree.
Initially, we agree with the trial court that it was inherent in our questions on remand that the trial court determine whether the Cregos had exercised due diligence in determining what were the proper successor corporations to BLH, before addressing the solvency issue. However, the evidence presented at the hearing held on remand demonstrated that the Cregos did exercise due diligence when they determined that Dial was BLH's successor corporation, and that it was solvent.
The evidence presented demonstrated that the Cregos' first attorney, Ron Schultz, and one of Schultz's associates, Kim Harshbarger, conducted research into the history of BLH. As a result of this research, Schultz named Armour, Greyhound, Dial, Clark Equipment, and CEC in its July, 1993 products liability action. Notably, Armour, Greyhound, Dial, and Clark Equipment filed a joint answer, admitting that Armour, Greyhound, and Dial "are the successor corporations of BLH." The Cregos voluntarily dismissed that action in March, 1994. Around that time, the Cregos obtained additional counsel, James A. Lowe. Lowe conducted additional research into the history of BLH, determining that BLH's successor corporations were Armour, Greyhound, and Dial. Lowe found that his conclusions were confirmed by the admission that Armour, Greyhound, and Dial had made in their August 30, 1993 Answer, that they "are successor corporations of BLH." Indeed, when Lowe re-filed the action in March, 1995, Armour, Greyhound, and Dial admitted, once again, that they "are successor corporations of BLH." Furthermore, Dial did not withdraw that admission until July, 1996 — long after the statute of limitations and savings statute period had expired. Under these circumstances, the Cregos exercised reasonable diligence in determining what the successor corporations to BLH were, and whether they were solvent. By the time the Cregos re-filed their action in March, 1995, the Cregos had a reasonable basis for believing that Dial was a solvent, successor corporation to BLH, and that, therefore, there was no basis for naming CEC as a party to the lawsuit pursuant to R.C. 2307.78(B).
The trial court implicitly acknowledged that the Cregos had been misled by Dial's admission that it was a successor corporation to BLH. Nevertheless, the trial court found that CEC should not be penalized because Dial misrepresented to the Cregos that it was a successor corporation to BLH. The trial court also implicitly found that the Cregos should not have relied on Dial's admission that it was a successor corporation of BLH.
However, it was reasonable for the Cregos to rely on Dial's admission that it was a successor corporation; the trial court's implicit finding that the Cregos should not have taken "yes" for an answer is, itself, unreasonable. Furthermore, it was improper for the trial court to consider the fact that CEC was not responsible for Dial's misrepresenting its status as a successor corporation. The focus of the questions posed on remand was whether the Cregos had acted with due diligence in determining if BLH had a solvent, successor corporation, not whether CEC was culpable in some way for the Cregos' failure to add them as a party before the savings statute period had expired.
CEC argues that the Cregos could not have acted with due diligence in determining whether BLH had any solvent, successor corporations, because they failed to name Clark Equipment as a party when they re-filed their products liability action. We find this argument unpersuasive. Once the Cregos reasonably believed that Dial was a solvent, successor corporation to BLH, there was no longer any basis for naming CEC as a party to the re-filed action. The fact that Clark Equipment may also have been a solvent, successor corporation is irrelevant to that fact.
On remand, CEC will be entitled to move for summary judgment if it can present evidence of the type listed in Civ.R. 56(C), demonstrating that either Clark Equipment or Dial is a solvent, successor corporation to BLH. If it does so, it will be entitled to summary judgment on the ground that since there is a solvent, successor corporation to the insolvent manufacturer (BLH), then no liability can accrue with respect to it, since it is simply a non-manufacturing seller. See R.C. 2307.78(B).
ultimate issue framed by the questions we posed on our remand from the initial appeal, however, is concerned only with whether the statute of limitations and savings period should be tolled, based upon the Cregos' exercise of due diligence in determining what the successor corporations to BLH were, and whether any of theym were solvent. The evidence in the record demonstrated that the Cregos had a reasonable basis for believing that and/or Dial was a solvent, successor corporation of BLH, as of August 30, 1993, the date on which Dial (along with Armour and Greyhound) filed an Answer admitting that it was a successor corporation to BLH. At that time, the two-year statute of limitations for strict product liability actions had expired, but the one-year period contained in the savings statute had not yet commenced. The Cregos did not learn that Dial was not a successor corporation until July, 1996. Once they learned that Dial was not a successor corporation, they filed an amended complaint against CEC on July 24, 1996. Accordingly, we conclude that the one-year savings period was equitably tolled until July, 1996, when the Cregos discovered that Dial was not a successor corporation, and the Cregos' decision to file against CEC shortly thereafter was timely, pursuant to this court's previous decision in Crego v. Baldwin-Lima-Hamilton Corp.
(Feb. 27, 1998), Montgomery App. No. 16515, unreported.[2]
The result would be the same if it could be argued that the Cregos should have known by March 7, 1996, that Dial was notAccordingly, the Cregos' First Assignment of Error is Ssustained.
 III
The Cregos' Second and Third Assignments of Error state as follows:
 THE TRIAL COURT ERRED IN REQUIRING APPELLANT TO FOREGO A MONETARY SETTLEMENT IN EXCHANGE FOR A JUDICIAL DETERMINATION AS TO SUCCESSOR CORPORATION STATUS.
 THE EQUITABLE RESOLUTION OF THE STATUTE OF LIMITATIONS ISSUE FOR SUPPLIER LIABILITY REQUIRES REVERSAL OF THE TRIAL COURT'S DECISION.
The Cregos' Second and Third Assignments of Error are rendered moot, given our disposition of the Cregos' First Assignment of Error, and, therefore, we need not decide them. See App.R. 12(A)(1)(c).
 IV
The Cregos' First Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
Claudia R. Eklund
Robert D. Erney
Hon. Jeffrey Froelich
[1] The Cregos' first counsel testified that he did not believe that BLH was in existence at the time he filed the Cregos' strict liability action in July, 1993.
[2] Even if Dial's motion for summary judgment of March 7, 1996, were deemed to have put the Cregos on notice from that date, that Dial was repudiating its admission that it was a successor corporation to BLH, thereby resuming the running of the statute of limitations as to CEC, the Cregos action against CEC would nevertheless have been timely.